**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN PAUL PRIOR,<br><br>        Petitioner,<br><br>v.<br><br>TONYA ANDREWS, in her official capacity as Facility Administrator of Golden State Annex Detention Facility, et al.,<br><br>        Respondents. | Case No. 1:25-CV-01131 JLT EPG<br><br>ORDER DENYING REQUEST FOR TEMPORARY RESTRAINING ORDER<br><br>(Docs. 3, 5) |

**I.     INTRODUCTION**

Martin Paul Prior is 56-year-old citizen of the United Kingdom who has been a lawful permanent resident (LPR) of the United States since 1993. (Doc. 1, ¶ 1.) He is married to a U.S. citizen and has two U.S. citizen children and a U.S. citizen grandchild. (*Id*., ¶ 8.)

Mr. Prior has a criminal history in this country, including several convictions for driving under the influence and related offenses (e.g., driving on a suspended license) sustained between 1998 and 2005. (Doc. 9-1, ¶¶ 22–27, 29, 32–33.) In 2013, he was convicted of possessing a controlled substance (methamphetamine). (*Id*., ¶ 28.) In 2014, he was convicted of felony stalking and felony stalking in violation of a temporary restraining order. (*Id*., ¶ 30–31.)

In February 2020, he was charged with removability based on the controlled substance and stalking convictions. (Doc. 9-1 at 11.) He was not detained at that time. On January 18, 2023,

1  he admitted to the charges of removability. (Doc. 9-1 at 20.) An Immigration Judge (IJ) found
2  Petitioner removable and designated the United Kingdom as the country of removal, should
3  removal become necessary. (*Id*.) On April 25, 2023, Mr. Prior applied for cancellation of
4  removal. (Doc. 9-1 at 20.)

5  On February 22, 2025, Mr. Prior was detained after returning to the United States from a
6  visit to see his mother overseas. (Doc. 1, ¶ 2.) He remains in custody and is currently detained at
7  Golden State Annex, located in McFarland, California. (*Id*., ¶ 14.) Respondents maintain that
8  Petitioner's detention is mandatory pursuant to 8 U.S.C. §1226(c)(1)(A). (*See* Doc. 9-1 at 6, ¶
9  38.)

10  Mr. Prior's application for cancellation of removal was heard by an IJ on April 18, 2025
11  (Doc. 9-1 at 20), who granted the request by written order on April 29, 2025 (Doc. 9-1 at 19–28).
12  DHS timely appealed the cancellation order. (Doc. 9-1 at 30–31.) That appeal remains pending.
13  (Doc. 1, ¶ 45.)

14  In three orders filed between July 14 and 29, 2025, pursuant to California Penal Code
15  § 1473.7(a)(1)[1], the Sonoma and Marin County Superior Courts, respectively, vacated Mr. Prior's
16  possession of a controlled substance and stalking convictions. (Doc. 1, ¶ 4; Doc. 1-3 at 16-29.)
17  Relying on those Superior Court orders, Mr. Prior argues that he is no longer subject to
18  mandatory detention. (Doc. 1, ¶ 6.) He has "repeatedly ask[ed] DHS officers for his release from
19  custody after providing DHS with evidence of his vacated convictions." (*Id*., ¶ 7.)

20  On August 29, 2025, Mr. Prior filed a motion to terminate his removal proceedings. (Doc.
21  1, ¶ 5.) DHS filed a substantive opposition to that motion on September 9, 2025. (Doc. 9-1 at 44.)
22  The motion remains pending.

23  On September 5, 2025, Mr. Prior filed a habeas petition in this Court, seeking relief under
24  28 U.S.C. § 2241. He contends therein that (1) he is no longer subject to mandatory detention
25  under 8 U.S.C. § 1226(c), so his continued detention violates the Immigration and Nationality Act

---

[1] Cal. Penal Code § 1473.7(a)(1) provides: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" on the ground that "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

2

1  (INA); (2) his continued detention, despite being in receipt of evidence that he is no longer
2  subject to mandatory detention or removal in light of his vacated convictions, is arbitrary and
3  capricious in violation of the Administrative Procedure Act (APA); and (3) relatedly, because he
4  is no longer subject to mandatory detention, his continued detention violates his substantive and
5  procedural due process rights. (Doc. 1 at 13–15.) Mr. Prior requests immediate release;
6  declaratory relief; an injunction against re-detention without a custody hearing before a neutral
7  arbiter in which the government bears the burden of proof; and an injunction against transfer from
8  the district or deportation pending the conclusion of these proceedings. (*Id*. at 15.) Also on
9  September 5, 2025, Mr. Prior filed a separate memorandum of points and authorities in support of
10 his Petition (Doc. 1-2) as well as a motion for a temporary restraining order, which seeks
11 immediate release and an injunction against re-detention without a custody hearing. (Docs. 3, 5.)
12     On September 8, 2025, the Court issued an order to show cause (OSC) why the Court
13 should not order Respondents to provide Mr. Prior with a hearing under *Matter of Joseph*, 22 I. &
14 N. Dec. 799 (BIA 1999), to determine whether he is still subject to mandator detention under 8
15 U.S.C. § 1226(c). (Doc. 6.) In the meantime, the Court ordered that Respondents shall not remove
16 Petitioner from the United States nor transfer him out of this District. (*Id*. (*citing F.T.C. v. Dean
17 Foods Co*., 384 U.S. 597, 604 (1966))). Respondents responded to the OSC on September 10,
18 2025, (Doc. 9), and Mr. Prior replied on September 12, 2025. (Doc. 10.)
19     For the reasons set forth below, the Court finds the matter suitable for decision on the
20 papers, declines to issue the requested emergency relief, converts the matter to a request for a
21 preliminary injunction, and sets a further briefing schedule.
22 **II.     LEGAL BACKGROUND**
23     Pending a decision on whether an "alien is to be removed from the United States," the
24 INA permits the Attorney General to release aliens on bond or conditional parole, "[e]xcept as
25 provided in subsection (c)." 8 U.S.C. § 1226(a). Section 1226(c) in turn indicates that the
26 Attorney General "shall take into custody any alien who" falls into one of the enumerated
27 categories involving criminal and terrorism offenses. 8 U.S.C. § 1226(c)(1). Relevant here is
28 § 1226(c)(1)(A), which makes detention mandatory for any alien who committed any offense

covered in 8 U.S.C. § 1182(a)(2), which in turn applies to any alien "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" any "crime involving moral turpitude" or controlled substance offense.[2] The Attorney General may release an alien described in § 1226(c)(1) "'only if the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)).

For someone who is properly detained under § 1226(c), the constitutional limit on the length of such detention is not well defined. The Court finds helpful the summary of relevant Supreme Court cases presented in *Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *3–5 (E.D. Cal. June 2, 2025):

> "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting *Rodriguez v. Hayes* (*Rodriguez I*), 591 F.3d 1105, 1114 (9th Cir. 2010)). In *Zadvydas v. Davis*, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" *Prieto-Romero [v. Clark]*, 534 F.3d [1053,] 1062 [(9th Cir. 2008)] (quoting *Zadvydas*, 533 U.S. at 701).
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). *Demore* distinguished *Zadvydas* by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal

---

[2] There appears to be no dispute here that Mr. Prior's controlled substance and stalking convictions trigger operation of § 1226(c).

4

proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter"). However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under 8 U.S.C. § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).

In the *Rodriguez* class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060, 1065 (9th Cir. 2015). In *Rodriguez II*, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *Rodriguez II*, 715 F.3d at 1138–44. In *Rodriguez III*, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of ... confinement grows.' " *Rodriguez III*, 804 F.3d at 1089 (quoting *Diouf v. Napolitano* (*Diouf II*), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed *Rodriguez III*, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." *Id*. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Since the *Rodriguez* remand, there has been "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3

(N.D. Cal. Jan. 25, 2019). *See Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And we take no position on that question."), *vacated and remanded on other grounds*, 144 S. Ct. 1339 (2024); *Avilez [v. Garland]*, 69 F.4th [525,] 538 [(9th Cir. 2023)] (declining to make a determination on whether due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court for consideration of due process claim). Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Martinez*, 36 F.4th at 1223 (citation omitted).

Following *Jennings*, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573] (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," *Arteaga-Martinez*, 596 U.S. at 581. *Arteaga-Martinez* declined to reach the constitutional claims, id. at 583, and "after the Supreme Court's decisions in Jennings and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under" 8 U.S.C. § 1231. *Rodriguez Diaz*, 53 F.4th at 1201.

### III.   ANALYSIS

#### A.   Jurisdiction

##### 1.   Habeas Corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts she is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack

by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Mr. Prior seeks immediate release from custody, which he contends violates the INA, the Constitution of the United States, and the APA. (*See* Doc. 1.) Thus, he properly invokes the Court's habeas jurisdiction, at least related to that form of relief.

### 2. Judicial Review under the INA

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," this Court has habeas jurisdiction over the issues raised here, namely the lawfulness of Mr. Prior's continued detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection).

### B.   Temporary Restraining Order

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

1  injunction is in the public interest." *Id*. "A preliminary injunction is an extraordinary remedy
2  never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).
3  Preliminary injunctions are intended to "merely to preserve the relative positions of the parties
4  until a trial on the merits can be held, and to balance the equities at the litigation moves forward."
5  *Lackey v. Stinnie*, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations omitted). The status quo
6  refers to "the last uncontested status which preceded the pending controversy." *Tanner Motor*
7  *Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v.*
8  *Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)).

### 1.   Likelihood of Success on the Merits

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Here, Mr. Prior's INA and Due Process claims (first, third, and fourth claims in the Petition) are all premised upon his assertion that he is no longer subject to § 1226(c) given the vacatur of his possession and stalking convictions. As mentioned, those convictions were vacated by orders dated July 14, July 21, and July 29, 2025. (Doc. 1-3 at 17–29.) On August 29, 2025, he filed a motion with the BIA to terminate his removal proceedings on that ground; and on September 9, 2025, DHS filed an opposition to that motion. That motion has been pending before the BIA for approximately three weeks.[3]

As mentioned, on preliminary review of the initial papers filed by Mr. Prior, the Court ordered Respondents to show cause why Mr. Prior should not be provided with a prompt *Joseph* hearing. (Doc. 6.) The Court based this OSC on two assumptions: (1) referencing publicly

---

[3] Mr. Prior filed the pending Petition and TRO request in this Court on September 5, 2025, more than a month after his convictions were vacated. This Court's Local Rule 231(b) provides:

> Timing of Motion. In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.

Arguably, Prior's request for emergency injunctive relief is untimely under this provision because Mr. Prior delayed its filing relative to the date on which he became aware of the relevant factual developments.

8

available docket information, the Court preliminarily believed that DHS had missed the deadline to file its brief in the appeal from the IJ's cancellation of Mr. Prior's removal, and (2) the Court presumed that Mr. Prior, who had filed a request to terminate removal proceedings based on the vacatur of his convictions, had requested a *Joseph* hearing. (*Id.*) In response to the OSC, Respondents provided the Court with more detailed information about the immigration case demonstrating that Respondents have not abandoned the BIA appeal. (Doc. 9 at 2.) In addition, Respondents indicate—and Mr. Prior does not refute—that Mr. Prior has not requested a *Joseph* hearing. (Doc. 9 at 5; *see also* Doc. 11 at 2.)

With all that in mind, the record suggests several things. First, Mr. Prior does not dispute that when he was detained on February 22, 2025, he was subject to § 1226(c) because of his criminal history. Second, though an IJ exercised discretion to cancel that removal pursuant to 8 U.S.C. §1229b(a) and 8 C.F.R. § 1240.8( d), (*see* Doc. 1-3 at 4), DHS's appeal from the IJ's order remains pending. (Doc. 1, ¶ 45.) As a result, the IJ's order is not final. *See Matter of E-Y-F-G*, I&N Dec. 103 (BIA 2025) ("The Immigration Judge's grant of relief in removal proceedings is not final as it has been appealed.").

Third, even though Mr. Prior appears to have a colorable argument that the recent vacatur of his convictions renders § 1226(c) inapplicable to him, DHS is contesting that matter before the BIA. Mr. Prior argues in reply that this Court "may decide in the first instance that he is not properly subject to mandatory detention given that each of the convictions underlying Respondents' charged grounds of inadmissibility have been vacated for procedural or substantive defects in their underlying proceedings," (Doc. 11 at 2), but he cites no cases that suggest a *district court*—which has limited jurisdiction over immigration matters—can entertain that issue under these circumstances.[4]

Thus, the Court is left to consider whether Mr. Prior's detention is excessive under the murky caselaw regarding the constitutional limits of detention under § 1226(c) outlined above.

---

[4] Mr. Prior does cite, for example, Ninth Circuit cases deciding appeals from BIA rulings, *see Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 n.3 (9th Cir. 2006); *Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006), as well as decisions from immigration courts, (*see* Doc. 11 at 4–5). These citations disregard the fact that this Court cannot insert itself into the immigration processes at issue in those cases.

The discussion of excessive detention in Mr. Prior's briefs presumes that the Court will find § 1226(c) inapplicable to him. But, given the absence of authority indicating that the Court can entertain that presumption at this point (or decide that issue at all), that discussion is not particularly helpful to the Court. Thus, the Court finds on this record that Mr. Prior has not established a likelihood of success on his INA or Due Process claims.[5] The Court will therefore **DENY** the request for a temporary restraining order without prejudice to the filing of a motion for preliminary injunction, which will permit the parties to further develop their arguments on these issues and/or to provide additional time for one or more of the motions before the BIA to proceed.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, Petitioner's motion for a temporary restraining order (Doc. 3) and related motion for release from custody (Doc. 5) are **DENIED WITHOUT PREJUDICE** to renewal in the form of a motion for preliminary injunction[6] **WITH THE FOLLOWING EXCEPTION**:

1. To preserve this Court's jurisdiction over the Petition, Respondents **SHALL NOT** remove Mr. Prior from the United States or transfer him out of this District without a further order from this Court.

IT IS SO ORDERED.

Dated:    **September 18, 2025**

UNITED STATES DISTRICT JUDGE

---

[5] The Court likewise finds that Mr. Prior is unlikely to succeed on his APA claim, which alleges that by continuing to detain him despite having unambiguous evidence that he is no longer subject to mandatory detention, Respondents have acted in an "arbitrary and capricious" manner in violation of the APA. (Doc. 1 at 13.) First, the case Mr. Prior cites in support of this conduct being "unjustified and arbitrary" did not concern the APA. (*See* Doc. 1-2 at 12 (citing *Haji S. v. Barr*, 2019 WL 3238354, at *3 (D. Minn., July 18, 2019).) In addition, the Court has more serious generic concerns about the viability of this claim, given that an APA claim alleging "arbitrary and capricious" conduct must arise under 5 U.S.C. § 706(2)(A) and thus must challenge a "final agency action," *see* 5 U.S.C. § 704. Petitioner's APA claim does not appear to address any final agency action.

[6] Should Petitioner elect to file a motion for a preliminary injunction, such motion shall be noticed pursuant to the timeline set forth in Local Rule 230.