# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN PAUL PRIOR,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:25-cv-01131-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DENY PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AS MOOT, DENY RESPONDENTS' MOTION TO DISMISS, AND ORDER PETITIONER'S IMMEDIATE RELEASE<br><br>(ECF Nos. 16, 18, 21) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the undersigned recommends granting the first amended petition for writ of habeas corpus, denying Respondents' motion to dismiss, and directing Respondents to provide Petitioner with a constitutionally sufficient bond hearing.

**I.**

**BACKGROUND**

Petitioner is a citizen of the United Kingdom and a lawful permanent resident of the United States. He obtained lawful permanent status on May 28, 1993. (ECF No. 16 at 10; ECF No. 16-1 at 10.) On or about January 1, 2020, Petitioner arrived at the San Francisco International Airport and was not admitted to the United States. After being screened at the San

1

Francisco Secondary Inspection, he was allowed to physically enter the United States. Petitioner was not confined to immigration custody at that time. (ECF No. 16 at 10–11.)

On February 24, 2020, Petitioner appeared for a scheduled appointment at the San Francisco Deferred Inspections Office, Customs and Border Patrol. (ECF No. 16 at 11; ECF No. 16-1 at 5.) At that appointment, Petitioner was served with a Notice to Appear ("NTA"), charging Petitioner as an arriving noncitizen who is inadmissible under 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) and 1182(a)(2)(A)(i)(I), due to his 2013 possession of methamphetamine and 2014 stalking convictions. (ECF No. 16 at 11; ECF No. 16-1 at 21–23.) The NTA notified Petitioner that he would be scheduled for an immigration hearing in San Francisco, California, at a date and time to be set. (Id.) Petitioner was not confined to immigration custody at that time. (ECF No. 16 at 11.) Petitioner was issued a Form I-94, which stated, "ALIEN UNDER 240 PROCEEDING DO NOT ADMIT AS LPR PAROLE ONLY." (ECF No. 16 at 11; ECF No. 16-1 at 25–26.)

Between February 2020 and February 2025, Petitioner traveled abroad and returned to the United States five times. (ECF No. 16 at 11; ECF No. 16-1 at 5–6.) With the exception of the last of these entries, Petitioner was paroled into the United States and was not confined to immigration custody. (ECF No. 16 at 11; ECF No. 16-1 at 6, 28–29.) At no time between February 2020 and February 2025 was Petitioner placed in immigration custody. (ECF No. 16 at 11.)

Between February 2020 and February 2025, Petitioner had no further encounters with law enforcement, he continued to engage in rehabilitation and treatment for substance abuse and addiction issues, he worked full-time as an electrician, and he continued to care for and support his U.S. citizen wife, two U.S. citizen children, and his U.S. citizen grandchild. (ECF No. 16 at 11; ECF No. 16-1 at 15–18.)

On February 22, 2025, Petitioner returned to the United States from a visit to Ireland to see his mother, when he was detained by Customs and Border Protection at the San Francisco International Airport. (ECF No. 16 at 12; ECF No. 16-1 at 6.) Petitioner has been detained since that time. At the time of his detention, Petitioner was provided with a Form I-213, Record of

Deportable/Inadmissible Alien, but without any finding by a neutral arbiter that he is a flight risk or a danger to the community. (ECF No. 16 at 12.)

On April 29, 2025, an immigration judge ("IJ") granted Petitioner's application for cancellation of removal, finding him statutorily eligible and meriting relief from removal in the exercise of discretion. (ECF No. 16 at 12; ECF No. 16-1 at 10–19.) On May 22, 2025, the Department of Homeland Security ("DHS") appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). To date, that BIA appeal remains pending. (ECF No. 16 at 12.)

In July 2025, all three of the convictions underlying the DHS's charges of inadmissibility against Petitioner were vacated by state court orders pursuant to California Penal Code section 1473.7(a)(1). (ECF No. 16 at 13; ECF No. 16-1 at 35–66.) Each of these vacatur orders state that the respective conviction was legally invalid due to a prejudicial error damaging Petitioner's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction. (ECF No. 16-1 at 35, 49, 58.)

In July and August of 2025, Petitioner's counsel communicated with the DHS Officer for the Office of the Principal Advisor assigned to Petitioner's case and with the U.S. Immigration and Customs Enforcement ("ICE") Fresno Field Office requesting Petitioner's release from immigration custody on the basis that he was no longer inadmissible as charged in light of his vacated convictions. To date, no ICE officer has responded to Petitioner's requests for release from immigration custody. (ECF No. 16 at 13; ECF No. 16-1 at 7.)

On August 29, 2025, Petitioner filed a motion to terminate his removal proceeding with the BIA on the basis that he is no longer inadmissible as charged due to his receipt of post-conviction relief. (ECF No. 16 at 13; ECF No. 16-1 at 68–131.) On September 9, 2019, DHS filed an opposition to Petitioner's motion. The motion to terminate remains pending with the BIA. (ECF No. 16 at 13; ECF No. 16-1 at 7.)

On September 5, 2025, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On September 18, 2025, the Court denied the motion for TRO without prejudice to renewal in the form of a motion for preliminary injunction. (ECF No. 12.)

On October 17, 2025, Petitioner filed with the immigration court a motion requesting a Matter of Joseph[1] hearing. (ECF No. 16 at 14; ECF No. 16-1 at 134–200.) On November 3, 2025, Petitioner filed a supplemental request. (ECF No. 16 at 14; ECF No. 16-1 at 202–19.) On November 4, 2025, an IJ "conducted a custody redetermination hearing . . . pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999) and INA section 236(a)." (ECF No. 16-1 at 222.) The IJ denied bond because "[a]fter considering all the evidence, the Court concluded that even if [Petitioner] is eligible for bond, he had not met his burden to establish that his release would not pose a danger to the community or such a significant flight risk that no amount of bond would be appropriate."[2] (ECF No. 16-1 at 222.) On November 14, 2025, Petitioner filed an appeal of the IJ's bond decision to the BIA, which remains pending. (ECF No. 16 at 14; ECF No. 16-1 at 8.)

On December 16, 2025, Petitioner filed a first amended petition ("FAP"), which challenges his detention, the bond hearing conducted by the IJ, and the IJ's bond determination on due process grounds. (ECF No. 16 at 18–22.) On December 24, 2025, Petitioner filed a motion for preliminary injunction. (ECF No. 18.) On January 16, 2026, Respondents filed a motion to dismiss the petition and opposition to the motion for preliminary injunction. (ECF No. 21.) On January 25, 2026, Petitioner filed an opposition to the motion to dismiss and reply to the opposition to motion for preliminary injunction. (ECF No. 22.) To date, no reply in support of the motion to dismiss has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Consolidation of Motion for Preliminary Injunction with the Merits

Given that the petition and the motion for preliminary injunction raise the same claims and seek identical relief, and for purposes of judicial efficiency, the undersigned recommends

---

[1] "Anyone who believes that he is not covered by § 1226(c) may also ask for what is known as a '*Joseph* hearing.'" Jennings v. Rodriguez, 583 U.S. 281, 289 n.1 (2018) (citing Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)). "At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" Jennings, 583 U.S. at 289 n.1 (alteration in original) (quoting Demore v. Kim, 538 U.S. 510, 514 n.3 (2003)).

[2] On December 2, 2025, the IJ provided a written memorandum to facilitate Petitioner's appeal of the bond determination. (ECF No. 16-1 at 221–26.)

"advanc[ing] the trial on the merits and consolidat[ing] it with" the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously). See also 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require.").

### B. Motion to Dismiss

Respondents contend that the petition should be dismissed because "arguments raised by Petitioner in this action are actively proceeding through the immigration court system. Pursuant to statute, unless and until the BIA rules on Petitioner's pending matters, Petitioner is subject to mandatory detention" and that "the 'conclusion of [Petitioner's] removal proceedings' provides the 'termination point' of the statutorily-required detention." (ECF No. 21 at 6 (quoting Jennings v. Rodriguez, 583 U.S. 281, 304 (2018)).)

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). "Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023).

Section 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id. "Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for certain criminal noncitizens." Lepe v. Andrews, 801 F. Supp. 3d 1104, 1115 (E.D. Cal. 2025). Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1226(c)(1)(A), which provides that the "Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A).

Section 1226(c) "specif[ies] that the Attorney General 'may release' one of those aliens '*only if the Attorney General decides*' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings, 583 U.S. at 303 (emphasis in original).

In contrast, "Petitioner alleges that he was re-detained pursuant to 8 U.S.C. § 1225(b)(2), after he was granted parole from 2020 to February 2025 pursuant to 8 C.F.R. §§ 212.5(b) and 235.3(c)(1)." (ECF No. 22 at 5.) The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when

the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings, 583 U.S. at 287–88.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Demore, 538 U.S. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v.

Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that §§ 1225(b)(1), (b)(2), and 1226(c) "contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98, 304–305. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself.*" (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024)

("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]").

In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. "Courts routinely review as-applied constitutional challenges to § 1226(c) detention." Kakkar v. Chestnut, No. 1:25-cv-1627 JLT SAB, 2025 WL 3638298, at *4 (E.D. Cal. Dec. 15, 2025) (collecting cases). To the extent Respondent relies on Jennings to argue that Petitioner's as-applied constitutional challenge is foreclosed, Jennings held the Ninth Circuit erred in finding a *statutory* right to *periodic* bond hearings. However, Jennings did not address the constitutional arguments. Therefore, Respondent's reliance on Jennings to dismiss Petitioner's constitutional claim is not persuasive.

Based on the foregoing, the undersigned recommends finding that Petitioner's as-applied constitutional challenge is not foreclosed, and thus, dismissal of the petition is not warranted.

**C. Procedural Due Process**

In his second claim for relief, Petitioner asserts that "[a]s part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his initial release from DHS custody." (ECF No. 16 at 19.) Petitioner argues that his "liberty interest is stronger than in an initial bond hearing before an immigration judge both because he is a lawful permanent resident, and because DHS previously declined to arrest him, and did not demonstrate changed circumstances before taking him into civil immigration custody." (Id.) Petitioner asserts that his "detention after being previously released on parole, without a predeprivation hearing," "with no notice, no explanation of the justification of his detention, and no opportunity to contest his detention before a neutral adjudicator before being taken into custody" violated due process. (Id. at 20.)

Respondents do not directly address Petitioner's argument that Petitioner has a protected liberty interest in remaining out of immigration custody. Rather, Respondents argue that the "arguments raised by Petitioner in this action are actively proceeding through the immigration

court system" and "unless and until the BIA rules on Petitioner's pending matters, Petitioner is subject to mandatory detention." (ECF No. 21 at 6.)

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

####      1.   Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

///

10

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See Omer G. G. v. Kaiser, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025) ("Under the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released 'pending a final decision' in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case."); Maklad v. Murray, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025) (finding petitioner has a protected liberty interest after having been released on parole for nearly three years).

This Court has held that a noncitizen who had been out of prison for four years and four months and then mandatorily detained pursuant to 8 U.S.C. § 1226(c) had a protected liberty interest in remaining out of custody. Kakkar v. Chestnut, No. 1:25-cv-1627 JLT SAB, 2025 WL

3638298, at *5–6 (E.D. Cal. Dec. 15, 2025). Further, this Court has held that a noncitizen who was mandatorily detained pursuant to 8 U.S.C. § 1226(c) upon release from prison, ordered released by a district court presiding over a class action challenging the conditions of confinement during the COVID-19 pandemic based on criteria that he did not pose a flight risk or present a danger to the community, complied with all requirements for five years while out of custody, and then re-detained "present[ed] a stronger due process concern because there ha[d] already been a court determination that petitioner did not present a flight risk or danger to the community, and respondents do not present any evidence of any change in these circumstances." Benevides Carballo v. Andrews, No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464, at *6 (E.D. Cal. Aug. 15, 2025), appeal filed, No. 25-6533 (9th Cir. Oct. 16, 2025).

Here, Petitioner was convicted in 2013 of possession of methamphetamine and sentenced to 30 days in jail and 36 months of probation. In 2014, Petitioner was convicted of stalking and sentenced to 120 days in jail and 36 months of probation. (ECF No. 16-1 at 23.) On February 24, 2020, Petitioner was served with an NTA charging Petitioner as removable as an arriving noncitizen who is inadmissible under 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) and 1182(a)(2)(A)(i)(I), due these convictions. Petitioner was not detained at that time and was issued a Form I-94, "which is the document typically provided to aliens 'parole[d] into the United States' pursuant to 8 U.S.C. § 1182(d)(5)(A)." Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1112 (9th Cir. 2007). Between February 2020 and February 2025, Petitioner traveled abroad and returned to the United States five times. With the exception of the last of these entries, Petitioner was paroled into the United States and was not confined to immigration custody. Between February 2020 and February 2025, Petitioner had no further encounters with law enforcement, he continued to engage in rehabilitation and treatment for substance abuse and addiction issues, he worked full-time as an electrician, and he continued to care for and support his U.S. citizen wife, two U.S. citizen children, and his U.S. citizen grandchild. (ECF No. 16 at 11.)

Regardless of whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or § 1226(c), Respondents fail to contend with the liberty interest created by the fact that Petitioner was released on parole for five years after the commencement of his immigration

proceedings in addition to his years of post-conviction freedom before the commencement of his immigration proceedings. Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

2. Mathews Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

Applying the Mathews test, courts in this district have found that petitioners with a protected liberty interest in remaining out of immigration custody are entitled to a bond hearing where the government bears the burden of proving by clear and convincing evidence that the petitioner is a danger to the community or a flight risk such that detention is warranted. See, e.g., Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."); Kakkar, 2025 WL 3638298, at *8 (ordering substantive parole revocation hearing where government bears burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Here, the IJ required Petitioner to bear the burden of establishing that he does not pose a danger to the community or a risk of flight. (See ECF No. 16-1 at 222 ("After considering all the evidence, the Court concluded that even if [Petitioner] is eligible for bond, *he had not met his burden* to establish that his release would not pose a danger to the community or such a significant flight risk that no amount of bond would be appropriate." (emphasis added)); id. at 225 ("Accordingly, after considering the totality of the evidence, the Court found [Petitioner] *had not met his burden* to demonstrate that his release would not pose a danger to the community." (emphasis added)).) Accordingly, the undersigned recommends finding that the procedures attendant upon Petitioner's detention were not constitutionally sufficient because the IJ required Petitioner to bear the burden of establishing that he does not pose a danger to the community or a risk of flight.[3]

The Court now turns to the appropriate relief. The Court finds instructive Phommavongsa v. Chestnut, No. 1:25-cv-01852-JLT-CDB (HC), 2026 WL 114468, at *8 (E.D. Cal. Jan. 15, 2026), report and recommendation adopted in part, 2026 WL 258412 (E.D. Cal. Jan. 30, 2026). In Phommavongsa, the petitioner was a lawful permanent resident who had been ordered removed in 2006 based on a then-approximately four-year-old qualifying criminal conviction. Following entry of the removal order, ICE took the petitioner into custody but he was subsequently released under an order of supervision after the government was unable to procure travel documents to effectuate the petitioner's removal. Phommavongsa, 2026 WL 114468, at *1–2. For eighteen years, the petitioner "remained out of custody, supported his family, was gainfully employed, and built his life in the community while fully complying with all supervision requirements, including periodic ICE check-ins, updating his address and contact information, and obeying all laws." Id. at *2. In 2025, the petitioner was re-detained at a check-in appointment, but subsequently an IJ granted a motion to reopen and issued an emergency stay of removal, making the prior removal order no longer administratively final. Id. Although the petitioner was subject to mandatory detention under § 1226(c), the Court found that he had a

---

[3] In light of this conclusion, the Court declines to address Petitioner's substantive due process claim and his challenge to the IJ's dangerousness and flight risk determinations.

protected liberty interest in remaining out of immigration custody based on his release on supervision. Phommavongsa, 2026 WL 114468, at *7. Given that the decision to release the petitioner "appear[ed] to be a tacit acceptance that Petitioner was not a flight risk nor a danger to the community," "Petitioner remained released from immigration detention for a significant amount of time—over 18 years—while supporting his family, building a life in the community, and without violating the terms of his supervised release," and the government did "not assert that Petitioner failed to comply with the conditions of his release, nor do they have any facts to suggest Petitioner is a danger to the public or a flight risk," id., the Court ordered Petitioner's immediate release and enjoined the government "from re-detaining Petitioner for more than 14 days without a bond hearing before a neutral arbiter at which the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community **UNLESS** there is a material change related to the likelihood of his imminent removal such that physical custody is legally justified," Phommavongsa, 2026 WL 258412, at *1.

Similarly, here, Petitioner's release on parole "pursuant to § 1182(d)(5) necessarily required a determination that he posed neither 'a security risk nor a risk of absconding.'" Rocha Chavarria, 2025 WL 3533606, at *3 (quoting 8 C.F.R. § 212.5(b)). The FAP alleges that between February 2020 and February 2025, Petitioner had no further encounters with law enforcement. (ECF No. 16 at 11.) And there is nothing in the record before this Court suggesting, and Respondents have not argued nor identified, a change in circumstance between February 24, 2020, when Petitioner was necessarily determined not to be a security or flight risk and paroled, and February 22, 2025, when Petitioner was detained.[4] See Meza v. Bonnar, No. 18-CV-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June 4, 2018) (finding that where noncitizen was detained under section 1226(c) and released, "due process would seem to require an administrative hearing to show a material change in circumstances" before she can be re-

---

[4] The Court recognizes that an IJ found Petitioner had not established that his release would not pose a danger to the community. However, the IJ's conclusion was based solely on Petitioner's past criminal convictions that pre-dated his release on parole. "[D]ecades-old criminal conduct is relevant but not dispositive in evaluating present danger, and there are serious due process concerns with simply presuming someone remains dangerous based on past conduct without individualized consideration *and any recent evidence*." Doe v. Becerra, 732 F. Supp. 3d 1071, 1087 (N.D. Cal. 2024) (emphasis added).

detained). Accordingly, the undersigned recommends finding that Petitioner's immediate release is the appropriate remedy.

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 16) be GRANTED on the second claim for relief.

2. Petitioner's motion for preliminary injunction (ECF No. 18) be DENIED as moot.

3. Respondents' motion to dismiss (ECF No. 21) be DENIED.

4. Respondents be directed to release Petitioner immediately.

5. Respondents be enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include at a minimum, predeprivation notice of at least seven days before a predeprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that he is likely to flee or pose a danger to the community if not arrested.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the

///

///

///

16

right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **February 5, 2026**                    /s/ _Erin P. Gron_
                                        UNITED STATES MAGISTRATE JUDGE