1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARTIN PAUL PRIOR,                         No. 1:25-cv-01131-JLT-EPG (HC)

12              Petitioner,                      ORDER ADOPTING IN PART FINDINGS
                                                 AND RECOMMENDATIONS, GRANTING
13        v.                                     FIRST AMENDED PETITION FOR WRIT OF
                                                 HABEAS CORPUS, DENYING
14   TONYA ANDREWS, et al.,                      PETITIONER'S MOTION FOR
                                                 PRELIMINARY INJUNCTION AS MOOT,
15              Respondents.                     DENYING RESPONDENTS' MOTION TO
                                                 DISMISS, AND DIRECTING CLERK OF
16                                               COURT TO CLOSE CASE

17                                               (Docs. 16, 18, 21, 23)

18        Martin Paul Prior is an immigration detainee who filed an amended petition for writ of

19   habeas corpus pursuant to 28 U.S.C. § 2241, (Doc. 16), and a motion for preliminary injunction,

20   (Doc. 18). Respondents filed a motion to dismiss the petition and opposed the motion for

21   preliminary injunction. (Doc. 21.)

22        On February 5, 2026, the magistrate judge issued Findings and Recommendations to grant

23   the first amended petition for writ of habeas corpus on the second claim for relief, to deny the

24   motion for preliminary injunction as moot, to deny Respondents' motion to dismiss, and directed

25   Respondent to release Petitioner immediately. (Doc. 23.) The Court served the Findings and

26   Recommendations on the parties and notified them that any objections were due within fifteen

27   days.  (*Id*. at 16.)  The Court advised them that the "failure to file objections within the specified

28   time may waive the right to appeal the District Court's order."  (*Id*. at 16–17 (citing *Wilkerson v.*

                                                 1

1    *Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).) Respondents filed objections to the Findings and

2    Recommendations (Doc. 24). According to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a

3    *de novo* review of the case. Having carefully reviewed the entire file, including Respondents'

4    objections, the Court adopts the Findings and Recommendations in part.

5        The Findings and Recommendations correctly concludes that under 8 U.S.C. § 1226(c) the

6    (1) Petitioner may raise an as-applied constitutional challenge to his mandatory detention and (2)

7    Respondents violated due process when they detained the Petitioner five years after his release on

8    parole without first showing a material change in circumstances as to flight risk or danger to the

9    community.[1] (Doc. 23 at 9, 11–15.) However, the Court departs from one aspect of the

10   recommended remedy regarding Petitioner's immediate release. The Court instead finds that

11   Petitioner is entitled only to a bond hearing in accordance with *Kakkar* and similar cases. *See*

12   *Kakkar v. Chestnut*, No. 1:25-cv-1627-JLT-SAB, 2025 WL 3638298, at *8 (E.D. Cal. Dec. 15,

13   2025)

14

---

15   [1]    Petitioner argues in his amended petition that the detention authority in this case is 8 U.S.C.§ 1225(b)(2).

16   (*See* Doc. 16, ¶ 83; Doc. 22 at 5.) However, it is unclear whether § 1225(b)(2) applies to this case. Sections 1225 and
      1226 govern the detention of non-citizens who are not yet subject to a final order of removal, as Petitioner in this

17   case. *Ortiz Donis v. Chestnut*, 1:25-cv-01228-JLT-SAB, 2025 WL 2879514 at *3–4 (E.D. Cal. Oct. 9, 2025). Section
      1225 governs the detention of non-citizens *seeking admission into* the United States, while Section 1226 governs the
      detention of non-citizens *already in the country* pending the outcome of their removal proceedings. *Id.*

18       Petitioner has been a lawful permanent resident of the United States since 1993. (Doc. 16, ¶ 1.) After

19   sustaining a series of deportable convictions in 2013 and 2014, and after re-entering the United States in January
      2020 after traveling abroad, DHS placed Petitioner in removal proceedings in February 2020 as an "arriving alien."

20   (Doc. 16, ¶¶ 2, 46, 47; Doc. 16-1 at 21.) In February 2020 and May 2022, Petitioner received two Form I-94 Parole
      Cards. (Doc. 16-1 at 25–29.) As the Findings and Recommendations notes, "an I–94 card, [] is the document

21   typically provided to aliens 'parole[d] into the United States' pursuant to 8 U.S.C. § 1182(d)(5)(A)." (Doc. 23 at 12
      (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 111, 1112 (9th Cir. 2007).) Under Section 1182(d)(5)(A) applicants

22   for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit"
      despite § 1225(b)'s mandatory detention provisions. (Doc. 23 at 6–7 (citing *Jennings v. Rodriguez*, 583 U.S. 281,
      287–88 (2018).)

23       Though the Findings and Recommendations conclude that Petitioner is entitled to relief under both §

24   1226(c) and § 1225(b), (*see* Doc. 23 at 12), the Court agrees with Respondent that Section 1226(c) is the governing
      detention authority in this case. (Doc. 21 at 5, n.2.) Section 1226(c)(1)(A) controls the mandatory detention of "any

25   alien who—is inadmissible by reason of having committed any offense covered in Section 1182(a)(2) of this title." 8
      U.S.C. § 1226(c)(1)(A). There is no question that Petitioner, originally a lawful permanent resident, was convicted in

26   2013 and 2014 for possession of methamphetamine and felony stalking, two deportable offenses covered under 8
      U.S.C. § 1182(a)(2)(A)(i)(I)–(II), which is also the statute cited in Petitioner's Notice to Appear. (*See* Doc. 16-1 at
      23.) Additionally, this case is most analogous to cases arising under § 1226(c)'s detention authority. *See Kakkar v.*

27   *Chestnut*, No. 1:25-cv-1627-JLT-SAB, 2025 WL 3638298, at *1–2 (E.D. Cal. Dec. 15, 2025); *Perera v. Jennings*,
      No. 21-cv-04136-BLF, 2021 WL 2400981, at *1–2 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-
      CRB, 2023 WL 2744397, at *1–2 (N.D. Cal. March 31, 2023). Thus, the Court adopts the Findings and

28   Recommendations' conclusions as they relate to §1226(c) only. (*See* Doc. 23 at 16.)

2

1    In *Kakkar*, this Court found that petitioner—a noncitizen convicted of a deportable

2    offense, namely an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii)—was subject to

3    mandatory detention under 8 U.S.C. § 1226(c) but was entitled to injunctive relief based on his

4    as-applied due process challenge. *Kakkar*, 2025 WL 3638298, at *1–2, 5 (involving a lawful

5    permanent resident who served time in prison for deportable aggravated felonies, was placed in

6    removal proceedings in 2018, was released from prison in 2021, and was not detained by ICE

7    until 2025). This Court explained that the petitioner had developed a liberty interest during his

8    four years of post-conviction freedom. *Id*. at *6. During his four years of release, petitioner

9    completed a three-year term of criminal supervision, paid back some restitution owed, did not

10   commit additional criminal offenses, was gainfully self-employed, maintained a stable residence,

11   and contributed to his community. *Id*. at *6–7. Instead of detaining the petitioner after his release

12   from prison in 2021, and despite being aware of his removability as early as 2018 (e.g., date the

13   Notice to Appear was issued), ICE waited until 2025 to detain him pursuant to § 1226(c). *Id*. at

14   *1–2. Yet, ICE failed to show a change in circumstances justified petitioner's arrest. *Id*. at *7.

15   There, this court found that the petitioner was entitled to a bond hearing where the

16   government bore the burden of showing a material change in circumstances justified petitioner's

17   detention. *Id*. at *8; s*ee also Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *1,

18   4–6 (N.D. Cal. June 11, 2021) (granting a bond hearing where the government bears the burden

19   of showing a material change in circumstances to justify petitioner's detention under § 1226(c)

20   despite petitioner having been free from ICE custody for six years following his release from

21   prison); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *1–2 (N.D. Cal. March

22   31, 2023) (granting a bond hearing where the government bears the burden of showing a material

23   change in circumstances to justify petitioner's detention under § 1226(c) despite petitioner having

24   been free from ICE custody for seven years following his release from prison).

25   The Findings and Recommendations finds *Phommavongsa* as instructive when deciding

26   the appropriate relief in this case. (Doc. 23 at 14 [citing *Phommavongsa v. Chestnut*, No. 1:25-cv-

27   01852-JLT-CDB, 2026 WL 114468, at *9–10 (E.D. Cal. Jan. 15, 2026), *report and*

28   *recommendation adopted in part*, 2026 WL 258412, at *1 (E.D. Cal. Jan. 30, 2026)].) There, this

3

1   Court found that petitioner was instead entitled to immediate release. *Phommavongsa*, 2026 WL

2   114468, at \*9–10. However, the petitioner in that case had a stronger argument regarding his

3   liberty interest in remaining free from custody. He was ordered removed in 2006 based on a

4   qualifying conviction, was taken into ICE custody in 2006 to effectuate his removal, was released

5   in 2007 on an order of supervision ("OSUP") after ICE was unable to secure travel documents,

6   was re-detained 18 years later to effectuate his removal with no timeline for actual removal, and

7   was eventually placed back under § 1226(c)'s mandatory detention authority when an IJ granted

8   petitioner's motion to reopen and stayed his removal. *Id*. at \*1–3. This Court explained that

9   petitioner was entitled to immediate release because (1) ICE's prior decision to release the

10  petitioner on OSUP suggested "a tacit acceptance that [p]etitioner was not a flight risk nor a

11  danger"; (2) petitioner remained released over eighteen years which was "a significant amount of

12  time"; (3) there was no indication that petitioner violated his conditions of release; and (4)

13  respondents failed to show that petitioner now presented a danger or flight risk. *Id*. at \*7, 9–10.

14          Unlike in *Phommavongsa*, Petitioner was never taken into ICE custody and subsequently

15  released on an order of supervision, and then re-detained by ICE eighteen years later. Though

16  Petitioner was paroled from 2020 to 2025, he was never formally released from ICE custody on

17  an order of supervision. (Doc. 16-1 at 24–29.) Instead, Petitioner's case is more akin to *Kakkar*,

18  *Perera*, and *Pham* because it involves Petitioner's initial ICE detention under § 1226(c) for a

19  criminal conviction sustained years earlier. *Kakkar*, 2025 WL 3638298, at \*1–2; *Perera*, 2021

20  WL 2400981, at \*1–2; *Pham*, 2023 WL 2744397, at \*1–2. In those cases, the petitioner received

21  only a bond hearing, not immediate release.

22          As the Findings and Recommendations note, Petitioner developed a liberty interest in

23  remaining out of custody following ICE's decision not to detain him for the past five years,

24  despite being aware of his deportable convictions as early as February 24, 2020, when the Notice

25  to Appear was issued. (Doc. 23 at 12.) During those five years, Petitioner had no further

26  encounters with the law, engaged in rehabilitation and treatment for substance abuse, worked full-

27  time as an electrician, and helped support his family. (*Id*.) Respondents fail to argue or show a

28  change in circumstances such that Petitioner now presents a flight risk or danger to justify his re-

4

1   detention. (*Id*. at 15.)

2          Though, on November 4, 2025, Petitioner received a custody re-determination hearing

3   pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999), as the Findings and

4   Recommendations notes, (Doc. 23 at 14), such hearing was deficient because the IJ placed the

5   burden on Petitioner to show that he was not a flight risk or danger. (*See* Doc. 16-1 at 221–26.)

6   Nonetheless, this Court cannot ignore the IJ's recent determination that "Respondent's history of

7   driving under the influence demonstrates a significant danger to persons and the community."

8   (Doc. 16-1 at 223.) The IJ acknowledged that "Respondent has not been arrested in the last ten

9   years" but even still, found that Respondent's "rehabilitative efforts failed to persuade the [c]ourt

10  that he has been sufficiently rehabilitated so as to sufficiently diminish the risk of danger to the

11  community." (*Id*. at 224–25.)

12         All this leads the Court to conclude that Petitioner's circumstances instead warrant a bond

13  hearing before a neutral adjudicator where the Government bears the burden of showing flight

14  risk or danger. *See Hernandez-Castro v. Lyons*, No. 1:25-CV-01574 JLT SAB, 2025 WL

15  3771344, at *9 (E.D. Cal. Dec. 31, 2025) (ordering a bond hearing for individual with final order

16  of removal because of unique circumstances); *Trejo v. Warden of ERO El Paso E. Montana*, No.

17  EP-25-CV-401-KC, 2025 WL 2992187, at *11 (W.D. Tex. Oct. 24, 2025) (ordering bond hearing

18  instead of immediate release for individual with final order of removal, noting court's flexibility

19  in fashioning federal habeas remedy). Accordingly, the Court **ORDERS**:

20         1.  The Findings and Recommendations issued on February 5, 2026 (Doc. 23) are

21             **ADOPTED IN PART**.

22         2.  The first amended petition for writ of habeas corpus (Doc. 16) is **GRANTED** on the

23             second claim for relief.

24         3.  Petitioner's motion for preliminary injunction (Doc. 18) is **DENIED** as moot.

25         4.  Respondents' motion to dismiss (Doc. 21) is **DENIED**.

26         5.  Respondents are **ORDERED** to provide the Petitioner with a *substantive* parole

27             revocation hearing **no later than March 25, 2026**, at which the Government **SHALL**

28             bear the burden of demonstrating by clear and convincing evidence that the Petitioner

is a flight risk or danger to the community if not arrested, and Petitioner **SHALL** be allowed to have counsel present.

6. Respondents are **PERMANENTLY ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include at a minimum, predeprivation notice[2] of at least seven days before a predeprivation hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

7. The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:    **March 12, 2026**

UNITED STATES DISTRICT JUDGE

---

[2] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's SHALL provide a bond hearing in the timeframe required by law.

6